FIELD & SHACKLEFORD *v.* JAMES CAMPBELL.

*The verdict of a jury will not be disturbed except for good cause, and damages will be allowed on an appeal from a judgment thereon.*

A PPEAL from the Second District Court of New Orleans, *Duvigneaud,* J. *Whitaker, Fellows and Mills* for defendant and appellant.

*Field & Shackleford in propria personæ.*—The petition alleges that, on the 7th May, 1860, the defendant, being then under arrest for killing one Peter Roach, employed plaintiffs to defend him on said charge ; that they informed him they would charge him $1,000, to which he made no objection ; that they immediately undertook his case, prepared affidavits, and obtained his discharge from the "lock-up" on bail, and continued to act as his counsel until 18th May, 1860, when defendant, without any sufficient cause, discharged them ; that they were always ready and willing to defend him in any court ; that *his case was a bad one,* and that $1,000 was but a reasonable fee in the case.

The answer contains a general denial, and a prayer for a trial by jury.

On the trial, plaintiffs obtained a verdict and judgment for $1,000, the whole amount claimed, and the District Judge before whom the case was tried, refused to disturb the verdict or grant a new trial, and the defendant has taken this appeal.

More than half dozen witnesses prove that defendant employed plaintiffs to defend him ; that plaintiffs prepared affidavits and presented them to the Recorder of the First District, and obtained defendant's release from the lock-up of said District on bail, before the case was examined by the Recorder ; that this was done at the urgent request of Campbell and his friends. In his answer to the *subpœna duces tecum,* the defendant admits that he received a letter from A. P. Field, inclosing a promissory note for $1,000, for him, defendant, to sign, in which Field informed him that said amount was as low a fee as he could properly charge him. It is true, said letter had no date, but the *subpœna duces tecum* describes it as a note handed to him while in the "lock-up." And *Mushet* says he saw the note for $1,000 in Campbell's possession, while in the lock-up, and *Richardson* says he saw said note in Campbell's hands, in the lock-up, and that he, Campbell, was reading it, on the day that he was admitted to bail by the Recorder.

After he was released by the Recorder, and had been out on bail some days, he was again arrested by the Chief of Police, and Colonel Field again appeared before the Recorder as counsel for defendant, and again obtained his discharge.

Some time after this, viz : on 18th May, 1860, defendant's case was laid before the grand jury, and Field was in the First District Court-room, off and on, all that day, attending to and watching the progress of the investigation ; and, when the jury returned a true bill, late in the afternoon, went, in company with defendant, to the parish prison, and up to the time they parted on that evening, as appears by the testimony of *Schaixneyder,*

the deputy sheriff, who took defendant to the prison, Campbell gave no signs of complaint against Field ; thus showing that defendant continued to avail himself of plaintiff's services as counsel, long after he received the note informing him of the amount of the fee charged, without objecting thereto, and establishing beyond controversy the special agreement laid in the petition.

But, in addition thereto, *Thomas J. Durant,* who was associate counsel in the case, in his testimony (p. 20), says he regarded the fee a reasonable one.

*T. J. Semmes, Isaac E. Morse, E. W. Moise,* all of whom had been Attorneys General for the State, and *B. S. Tappan,* who had been District Attorney, all testify as to the general ability and skill with which Field managed criminal cases, and none of them had ever known him to mismanage a defence.

The defendant himself offered in evidence his note, discharging plaintiffs from further attention to his case, but offered no proof of mismanagement or neglect ; and, in fact, his only ground of complaint (see testimony of *Mullen,* p. 16,) was that plaintiffs had failed to do that which they were not bound as counsel to do, and which neither they nor defendant had any legal right to do or demand, viz: to summon witnesses to appear before the coroner's jury, and be notified of the time at which the grand jury would take up his case.

These are in law *ex parte* proceedings, and the accused has no right to be heard there, or, indeed, in contemplation of law, even *to know* that such investigations are being held; and no such complaint was heard until after defendant and his friends, upon consultation in the parish prison, had concluded that it was to the interest of defendant to employ another legal gentleman, whom they supposed to have more influence than Field with the then Judge of the First District Court, before whom he was to be tried.

HYMAN, C. J. Plaintiffs sued defendant for $1,000, attorneys' fees.
The case was tried by jury, and a verdict given in favor of plaintiffs.
The District Court rendered judgment in conformity to the verdict.
Defendant, failing to obtain a new trial, appealed.
The claim of the plaintiffs is fully proven.
Judgment affirmed, with fifty dollars damages.

JONES, J., absent.